

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
KGK JEWELRY LLC,

        Plaintiff,

    -v-                            No. 11 Civ. 9236 (LTS)(RLE)

ESDNETWORK and STEVE YEKO,

        Defendants.

-------------------------------------------------------x

MEMORANDUM OPINION AND ORDER

       Plaintiff KGK Jewelry LLC ("Plaintiff" or "KGK") brings this action against Defendants ESDNetwork ("ESDN") and Steve Yeko ("Yeko") (collectively, "Defendants"), asserting claims for breach of contract, tortious interference with third-party contracts, tortious interference with prospective business relations, and unfair competition. Plaintiff also seeks to pierce the corporate veil of ESDN and hold Yeko personally liable for all claims. Defendants have moved pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff's Second Amended Complaint ("SAC" or the "Complaint") for failure to state a claim upon which relief can be granted.[1] The Court has jurisdiction of this action pursuant to 28 U.S.C. § 1332. For the following reasons, Defendants' motion is granted in part and denied in part.

BACKGROUND

       The following facts are derived from the allegations in the SAC, and are assumed to be true for purposes of this motion practice. KGK is a New York company that manufactures jewelry and provides customized marketing services to 70 independently-owned retail jewelry

---

[1] Defendants have sought to dismiss the SAC "in its entirety," but have failed to address Plaintiff's unfair competition claim. The motion is therefore treated as one to dismiss all claims other than the unfair competition claim.

stores.  (SAC ¶¶ 1, 4, 10.)  Defendant ESDN is a privately-held company, organized under the laws of Wisconsin, which provides web-based marketing tools and services to retail businesses. (Id. ¶ 5.)  Defendant Yeko is the Chief Executive Officer of ESDN and is domiciled in Wisconsin.  (Id. ¶ 6.)

As of October 20, 2011, KGK had executed contracts with 70 retail jewelers, agreeing to provide certain services for a new Internet-based marketing program.  (Id. ¶¶ 10, 13, 18.)  One feature of the marketing program was an in-store kiosk, which contained a touch screen tablet computer that the retailers' customers could use to obtain information regarding the retailers' inventory and register for various promotional events.  (Id. ¶¶ 11-12.)  Other services included "television commercials, newsletters, catalogs, social media, and in-store events."  (Id. ¶ 12.)  A "critical component" of the marketing program was the collection of customers' email addresses via the in-store kiosks.  (Id.)  The retailers used these email addresses to send their customers information periodically about the store and sale events.  (Id.)

In two letters signed by Yeko and dated October 20, 2011 (hereinafter, "Yeko Contracts"), KGK agreed to pay ESDN for providing some of these services for a twelve-month time period.  (Id. ¶¶ 16-17.)  The first letter indicated that KGK had already fully paid ESDN for providing services to 52 of the enrolled retail stores and included a list of those stores.  (Id. ¶ 19, Ex. B.)  The second letter included a list of the remaining 19 stores that were enrolled in the program and indicated that KGK would pay ESDN for those services sometime in the future. (Id. ¶ 19, Ex. B.)  The SAC alleges that, "[a]lthough Defendants did not provide all the retailers with kiosks or performed [sic] all of their obligations under the Yeko Contracts, including providing each retailer access to the computer system," KGK had paid over $350,000 to Defendants by the time of the filing of the SAC.  (Id. ¶ 20.)

After executing the Yeko Contracts, Defendants claimed that they were owed nearly $1 million for additional services.  (Id. ¶ 21.)  KGK refused to pay, and Defendants threatened to stop providing all marketing services.[2]  (Id. ¶¶ 1-6.)  Defendants knew that withholding their services would "wreak havoc" on the retailers' business.  (Id. ¶ 24.)  Moreover, without Defendants' services, Plaintiff would be in breach of its contracts with the retailers.  (Id.)

In early February 2012, KGK learned that Defendants had retained certain email addresses that retailers' customers had supplied through the kiosks.  (Id. ¶ 29.)  KGK demanded that Defendants return the email addresses to either KGK or the retail jewelers; Defendants refused.  (Id. ¶ 29.)  KGK alleges that Defendants' refusal constitutes a breach of the Yeko Contracts "in that Defendants' authority to retain and/or possess information stored on the kiosks was limited to the fulfillment of its marketing services detailed in the Yeko Contracts."  (Id. ¶ 30.)  Plaintiff also alleges that Defendants' retention of the email addresses "has caused KGK to be in breach of its contractual obligations to its retail stores" by "preclud[ing] KGK from providing its retail stores with certain customer information that KGK has agreed to provide and the retail stores expect KGK to provide."  (Id. ¶ 31.)

KGK also learned in early February 2012 that Defendants were "improperly contacting KGK's retail stores, including but not limited to communications through the kiosks,

---

[2]    On December 16, 2011, KGK commenced this action and expressed its intent to seek a temporary restraining order and preliminary injunction.  (SAC ¶25.)  On the same date, Defendants and KGK reached an agreement whereby Defendants would refrain from shutting off KGK's computer system and KGK would withdraw its request for injunctive relief.  (Id. ¶ 25.)  Despite this agreement, Defendants' threats continued.  (Id. ¶¶ 26.)  In February 2012, KGK switched to a new kiosk system and ceased working with Defendants.  (Id. ¶¶ 27.)

in an attempt to intentionally divert and steer KGK's business opportunities to Defendants, including the marketing services that are the subject matter of the Yeko Contracts." (Id. ¶ 32.) Specifically, Defendants "encourage[d] [the retail stores] to cease working with KGK and use Defendants' competing services." (Id. ¶ 28.) Plaintiff alleges, "upon information and belief," that Defendants have continued to "improperly" contact its retail stores, despite its demands that Defendants cease. (Id. ¶ 33.)

Plaintiff's Complaint also puts forth several allegations relevant to its corporate veil piercing claim. First, Plaintiff alleges that "[t]here is such unity between Defendants ESDN and Yeko that the separateness of ESDN has ceased," and that failing to hold Yeko liable "would result in injustice." (Id. ¶ 36.) Plaintiff alleges, "upon information and belief," that Yeko holds a majority financial interest in ESDN and "exercises total domination and control over ESDN." (Id. ¶ 37.) Plaintiff further alleges that, "[u]pon information and belief, ESDN's sole purpose has been to serve Yeko for his individual interest, profit, benefit and advantage," and that "ESDN merely operates as the alter ego of Yeko." (Id. ¶ 38.) The Complaint also includes allegations that the Yeko Contracts were signed by Yeko without any indication that he was doing so in his capacity as CEO of ESDN, and that the "About Us" page of ESDN's website refers solely to Yeko without mentioning any other officers or directors of ESDN. (Id. ¶¶ 39-40.) Moreover, "upon information and belief," ESDN's finances are "co-mingled with and integrally tied to" those of Yeko. (Id. ¶ 41.) Finally, Plaintiff alleges "upon information and belief" that Yeko "authorized, directed and approved of . . . or should have known" of ESDN's actions as described above.

<u>DISCUSSION</u>

In deciding a motion to dismiss a compliant pursuant to Rule 12(b)(6) of the

Federal Rules of Civil Procedure, the Court accepts as true the non-conclusory factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. Roth v. Jennings, 489 F.3d 499, 501 (2d Cir. 2007); see also Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009). "A pleading that offers labels and conclusions or a formulaic recitation of elements of a cause of action will not do." Iqbal, 556 U.S. at 677 (internal quotation marks and citation omitted). Rather, to survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic v. Twombly, 550 U.S. 544, 570 (2007). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Iqbal, 556 U.S. at 677 (internal quotation marks and citations omitted). For this reason, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." Iqbal, 556 U.S. at 663.

In deciding a motion to dismiss, the Court may consider, in addition to the factual allegations of the complaint, "documents attached to the complaint as an exhibit or incorporated in it by reference ." Brass v. American Film Tech., Inc., 987 F.2d 142, 150 (2d Cir. 1993) (citing Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47-48 (2d Cir. 1991)).

Breach of Contract Claim

To plead a breach of contract claim under New York law, a party must allege "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." Harsco Corp. v. Segui, 91 F.3d 337, 348 (2d Cir. 1996) (internal citation omitted). Defendants argue that Plaintiff's breach of contract claim fails to plead sufficiently the third element – breach of the contract by the other party.

Plaintiff alleges that, under the Yeko Contracts, Defendants were obligated to provide services for a twelve-month period, and that their failure to do so constitutes a breach. Defendants argue that the Yeko Contracts were unclear as to duration, start date, and end date, and therefore do not state when Defendants were allegedly required to perform the listed services. Although the Yeko Contracts do not include any explicit terms regarding duration, start date, or end date, they do provide that ESDN will provide "annually [sic] ESDN support." (SAC, Ex. C.)  This term could support a reasonable inference that the Yeko Contracts contemplated a twelve-month term of duration.

Defendants next argue that Plaintiff's claims premised on Defendants' retention of customers' email addresses fail because there is no explicit provision in the Yeko Contracts requiring Defendants to provide access to customer email addresses.  The SAC, however, alleges that this conduct breached Defendants' implied duty of good faith and fair dealing in the course of performance.  "Under New York law, a covenant of good faith and fair dealing is implied in all contracts and [a] breach of the duty of good faith and fair dealing is considered a breach of contract."  Fishoff v. Coty Inc., 634 F.3d 647, 653 (2d Cir. 2011).  "Encompassed within the implied obligation of each promisor to exercise good faith are any promises which a reasonable person in the position of the promisee would be justified in understanding were included.  This embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract."  Dalton v. Educational Testing Service, 87 N.Y.2d 384, 389 (1995) (internal quotations omitted).  Moreover, "a party may be in breach of an implied duty of good faith and fair dealing, even if it is not in breach of its express contractual obligations, when it exercises a contractual right as part of a scheme to . . .

deprive the other party of the fruit of its bargain." Eaves v. Designs for Finance, Inc., 785 F.

Supp. 2d 229, 258 n.22 (S.D.N.Y. 2011) (quoting Duration Mun. Fund, L.P. v. J.P. Morgan Sec.

Inc., 899 N.Y.S.2d 59 (Sup. Ct., N.Y. Co., Sept. 16, 2009)).  Plaintiff alleges that obtaining

customers' email addresses was "a critical component" of the kiosk services because they

enabled the retailers to target customers with sales and store information.  (SAC ¶ 12.)  Thus, the

Complaint adequately alleges that Defendants' refusal to turn over those addresses breached the

implied covenant of good faith and fair dealing.

       Defendants similarly argue that their communications with KGK's retail jewelers

do not constitute breach of contract because the Yeko Contracts do not explicitly forbid such

communications.  Plaintiff admits that Defendants had limited authority to contact the retail

jewelers because Defendants were required to provide annual ESDN support under the terms of

the Contracts.  However, Plaintiff argues – and the SAC makes adequately clear – that it is

challenging a much more limited course of conduct, namely, Defendants' attempts to divert

Plaintiff's customers by contacting them through the kiosks that ESDN was contracted to

provide.  Like the allegations regarding withholding of customer information, this allegation

states a claim for breach of the implied duty of good faith and fair dealing.

       Lastly, Defendants argue that the breach of contract claim is impermissibly vague

because the SAC does not identify which services Defendants failed to perform.  The SAC

alleges that "Defendants did not provide all the retailers with kiosks or perform[] all of their

obligations under the Yeko Contracts."  (SAC ¶ 20.)  The SAC does not specify which retailers

did not receive kiosks, although it lists all of the relevant retailers, nor does it provide any details

as to which obligations Defendants failed to fulfill.  The Court finds these allegations too vague

to state a claim with respect to failure "to perform[] all of [Defendants'] obligations under the Yeko contracts."

Accordingly, the Court grants the motion to dismiss Plaintiff's claims premised on Defendants' breach of its duty to perform obligations that are not specified in the SAC. The claims predicated on Defendants' withholding of customer information, improper communication with customers, and failure to install kiosks survive.

II.    Claim for Tortious Interference with a Third-Party Contract

Under New York law, a claim of tortious interference with contractual relations requires a four-part showing: "(i) existence of a valid contract; (ii) defendant's knowledge of that contract; (iii) defendant's intentional procurement of the breach of that contract; and (iv) damages caused by the breach." G.K.A. Beverage Corp. v. Honickman, 55 F.3d 762, 767 (2d Cir. 1995).

Plaintiff claims that Defendants have tortiously interfered with its third-party contracts by withholding the disputed customer email addresses, thereby preventing Plaintiff from performing its contractual obligation to share that information with its retailers. Relying on Israel v. Wood Dolson Co., 1 N.Y.2d 116, 120 (1956) and NBT Bancorp Inc. v. Fleet/Norstar Financial Group, Inc., 641 N.Y.S.2d 581 (1996), Defendants argue that a tortious interference with contractual relations claim only lies where the defendant interfered with the third-party's performance of the contract, not the plaintiff's performance. Defendants thus move to dismiss this claim for failure to show a third-party breach.

This precise issue – whether tortious interference with contractual relations requires a third-party breach – was thoroughly examined in Italverde Trading, Inc. v. Four Bills

of Lading, 485 F. Supp. 2d 187, 203 (E.D.N.Y. 2007), which concluded that a showing that a defendant's action caused plaintiff to breach was sufficient to state a claim.  The Court cannot conceive of any principled reason why the tort should be cabined as Defendants propose; nor is it aware of any binding authority directly holding that a breach by plaintiff will not suffice. Accordingly, the Court adopts the reasoning of Italverde.  See also Morris v. Blume, 55 N.Y.S.2d 196, 199 (Sup. Ct. N.Y. Co. 1945) (holding that "[a]n unlawful interference with a person in the performance of his contract with a third party is just as much a legal wrong as is an unlawful inducement of a breach of that contract by a third party"); Stiso v. Inserra Supermarkets, Inc., 179 A.D.2d 878 (1992) (finding defendant's exclusion of plaintiff-sales representative from its stores constituted tortious interference with plaintiff's exclusive distribution contract with distributor); DEP Corp. v. Interstate Cigar Co., Inc., 622 F.2d 621, 624 (2d Cir. 1980) (recognizing plaintiff might state an unlawful interference with a contract claim where defendant caused plaintiff to breach the contract).

Defendants' motion to dismiss Plaintiff's tortious interference claim is therefore denied.

Claim for Tortious Interference with Prospective Business Relations

To establish a claim for tortious interference with prospective business relations under New York law, "a plaintiff must establish '(1) that [he] had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship.'"  Friedman v. Coldwater Creek, Inc., 321 F. App'x 58, 60 (2d Cir. 2009) (quoting Kirch v. Liberty Media Corp., 449 F.3d 388, 400 (2d

Cir. 2006). The New York Court of Appeals has held that "[a]s a general rule, the defendant's conduct must amount to a crime or an independent tort" because "[c]onduct that is not criminal or tortious will generally be 'lawful' and thus insufficiently 'culpable' to create liability for interference with prospective contracts or other non-binding economic relations." Carvel Corp. v. Noonan, 818 N.E.2d 1100, 1103 (N.Y. 2004) (internal citation omitted). "A defendant who has not committed a crime or independent tort or acted solely out of malice may nevertheless be liable if he has employed 'wrongful means.'" Friedman, 321 F. App'x at 60. "'Wrongful means' include physical violence, fraud or misrepresentation, civil suits and criminal prosecutions, and some degrees of economic pressure; they do not, however, include persuasion alone although it is knowingly directed at interference with the contract." Guard-Life Corp. v. S. Parker Hardware Mfg. Corp., 50 N.Y.2d 183, 191, 406 N.E.2d 445, 449 (1980). For economic pressure to be wrongful it must be "extreme and unfair." Carvel Corp., 818 N.E.2d at 1105.

Plaintiff alleges that Defendants interfered with its business relations by contacting the retail jewelers through the kiosks and encouraging them to cease working with Plaintiff and use Defendants' competing services. This conduct does not amount to a crime or independent tort. Nor does this conduct constitute "extreme and unfair" economic pressure. Cf. Masefield AG v. Colonial Oil Indus., No. 05 Civ. 2231, 2006 WL 346178, *9 (S.D.N.Y. Feb. 15, 2006) (urging third party to raise prices or cancel contract not extreme or unfair economic pressure); Lawrence v. Union of Orthodox Jewish Congregations of Am., 32 A.D.3d 304 (1st Dep't 2006) (sending letter to employer's customers urging boycott of employer unless employer fired plaintiff not extreme and unfair economic pressure).[3]

---

[3] Nor does the Complaint allege facts sufficient to support the inference that Defendants contacted the retailers with the sole purpose of inflicting harm on

Even if Plaintiff could establish that Defendants' conduct involved wrongful means, the SAC does not allege such conduct with enough specificity to place Defendants on notice. For example, the SAC does not allege which retailers were contacted, what form the communications "through the kiosks" took, nor the content of those communications.[4]

Accordingly, the motion to dismiss Plaintiff's interference with prospective business relations claim is granted.

<u>Yeko's Personal Liability</u>

Defendants argue that any claims brought against Yeko in his individual capacity should be dismissed because he is not a party to the Yeko Contracts. In its opposition papers, the only basis Plaintiff advances for holding Yeko personally liable is piercing the corporate veil.

With one exception, Plaintiff's allegations in support of its veil piercing claim are entirely conclusory. The one non-conclusory allegation – that Yeko signed the Yeko Contracts without specifying that he was acting in a corporate capacity – is, standing alone, insufficient to raise the necessary inference of unitary and unjust conduct. <u>Cf.</u> <u>Consumer's Co-op. of Walworth County v. Olsen</u>, 142 Wis. 2d 465, 484 (1988) (plaintiff seeking to corporate veil must show

---

Plaintiff. The Complaint does not allege that Defendants reached out to retailers in retaliation for Plaintiff's refusal to pay their demands. In fact, the Complaint notes the Defendants are "in the business of providing web-based marketing tools and services to those in the retail supply chain," which suggests that Defendants had an independent economic incentive to divert Plaintiff's customers.

[4]   In its Memorandum in Opposition to Defendants' Motion to Dismiss, Plaintiff alleges that "Yeko has recently resorted to defaming and disparaging KGK to KGK's customers in an attempt to sabotage and steal business opportunities with these customers." This allegation was not included in the Second Amended Complaint. The Court therefore declines to consider it here.

complete control used by defendant to commit a wrong).[5]  Plaintiff's claims against Yeko will therefore be dismissed.

Injunctive Relief

Finally, Defendants argue that Plaintiff's request for injunctive relief is moot because, according to the SAC, Plaintiff has already taken over all of the retailer kiosks and completely cut ESDN off from the retailers.  Thus, to the extent the SAC seeks to compel Defendants to provide the services detailed in the Yeko Contracts, that request is moot.  However, Plaintiff argues that Defendants continue to withhold certain customer information from KGK and/or its retail stores.  That claim is not moot.  Therefore, the motion to dismiss that claim is denied.

CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss  Plaintiff's SAC is granted in part and denied in part as follows.  Plaintiff's First Cause of Action (breach of contract) is dismissed insofar as it is premised on failure to perform unspecified "obligations."  Plaintiff's Second Cause of Action (injunctive relief) is dismissed insofar as it seeks relief "directing Defendants to meet their obligations under the Yeko Contracts."  Plaintiff's Fourth Cause of Action (tortious interference with prospective business relationships) is dismissed.  All claims against Defendant Yeko in his personal capacity are dismissed.  The motion is denied in all other respects.

---

[5]  "Under New York's choice-of-law rules, the law of the state of incorporation . . . determines when a court may pierce the corporate veil." RUS, Inc. v. Bay Industries, Inc., No. 01 Civ. 6133, 2004 WL 1240578, at *21 (S.D.N.Y. May 25, 2004) (citing Fletcher v. Atex, Inc., 68 F.3d 1451, 1456 (2d Cir. 1995)).  Because ESDN is incorporated under the laws of Wisconsin, Wisconsin law governs.

This Memorandum Opinion and Order resolves docket entry no. 24.

SO ORDERED.

Dated: New York, New York
       January 8, 2013

LAURA TAYLOR SWAIN
United States District Judge